# CHARLESTON

## KELNER *v.* COWDEN, Adm'r.

Submitted August 9, 1906.    Decided November 20, 1906.

1. APPEAL—*Dismissal—Renewal.*
    When an appeal has been dismissed for failure on the part of the appellant to deposit with the clerk of the appellate court within six months after his case has been docketed, a sufficient amount to pay for printing the record, as provided by section 18, chapter 135, Code 1906, Annotated, such appeal may be renewed at any time within two years from the date of the judgment, order or decree appealed from.    (p. 602.)

2. SAME—*Review.*
    When an order is appealed from, within the time provided by the statute, and the error complained of is based solely on an appealable order not reversed or appealed from, entered more than two years before the appeal is taken, such error cannot be reviewed. (p. 603.)

3. SAME—*Reversal.*
    When an order for the payment of money is so appealed from and is based solely on a former order making an allowance to attorneys to be paid from the estate of a decedent which former order is null and void, although entered more than two years before the appeal is allowed, the order so appealed from will be reversed. (p. 606.)

4. MOTIONS—*Void Order.*
    A void order is not made valid by lapse of time and ever remains without effect as completely as if never entered. (p. 607.)

Appeal from Circuit Court, Cabell County.

Bill by R. Kelner against W. K. Cowden, administrator. Decree for plaintiff, and defendant appeals.

*Affirmed in part.    Reversed in part.*

RUFUS SWITZER and BROWN, JACKSON & KNIGHT, for appellant.

SIMMS & ENSLOW, L. D. ISBELL, and T. J. BRYAN, for appellee R. Kelner.

WALLACE & FITZPATRICK, for appellee O. J. Wilkinson.

MCWHORTER, PRESIDENT:

R. Kelner, holding a judgment lien of $81.60 against the

real estate of John B. Laidley, filed her bill in the circuit
court of Cabell county against W. K. Cowden, administrator
of John B. Laidley, deceased, and judgment creditors of the
said John B. Laidley, which cause was referred to O. J.
Wilkinson, a special commissioner appointed for the purpose,
to ascertain and report an account showing the real estate of
which said Laidley died seized, its nature, where situate and
the value thereof; the dates, amounts and priorities of the
liens, if any, upon said real estate; to whom the said Laidley
was indebted and in what amounts, the date and nature of
said claims; to make settlement with W. K. Cowden as ad-
ministrator of the estate of said Laidley; and in what parcels
of the tract of 240 acres of land known as the "Pennybacker
Tract" mentioned in the bill, if any, the defendant Jennie B.
Laidley was entitled to dower; and any other matter that any
of the parties in interest might require. The commissioner
filed his report in the cause in March, 1900, claiming for ser-
vices as said commissioner 900 hours at .75 per hour, making
his charge $675.00. On the 21st day of September, 1900, an
order was made allowing said account of $675.00 to be paid
out of the estate. There appears to have been nothing more
done in the case until the 21st day of July, 1903, when the
following order was made in said cause:

"This day L. D. Isbell and T. J. Bryan, attorneys for the
plaintiff and the other creditors of said John B. Laidley, de-
ceased, appeared and asked the Court to make an allowance
to them for their services rendered in this cause, and the
Court being familiar with the facts and the value of the ser-
vices rendered by said attorneys, is of opinion that they are
entitled to compensation for said services, and doth hereby
allow the sum of $1,800.00 to be paid to said attorneys out of
any funds that may come into the hands of said Laidley's
administrator, or any other person or corporation that may
have, or may hereafter have, funds in their hands belonging
to the estate of the said John B. Laidley, deceased, and this
shall be and constitute a chargeable lien upon any of the
funds aforesaid."

Afterwards in December, 1903, the said Bryan and Isbell
and the said O. J. Wilkinson respectively filed their several
petitions representing that the said Cowden, administrator of
the estate of said Laidley, had received from Huntington

Land Company in full settlement and consideration of the judgment held by the said Laidley in his lifetime against Margaret Sands the sum of $605.81, which sum was paid by virtue of an order entered in this case and of an order entered in the ejectment suit of said Laidley against Sands revived in the name of Cowden, administrator of Laidley, praying for a rule against said Cowden to appear and show cause why he should not pay over to the petitioners, Bryan and Isbell, the said sum of $605.81 on account of their order for $1,800.00, and the petition of Wilkinson praying that the same might be paid to him on account of his claim which he insisted was a preferred claim to be first paid in accordance with the order of the circuit court. Said Cowden, administrator, resisted the said petitions by answer. On the 7th day of January, 1905, the cause was heard upon the proceedings theretofore had and upon the orders made allowing to Isbell and Bryan, attorneys, the said $1,800.00 and upon the rule against said Cowden and the petition of Wilkinson, commissioner, asking for his fees to be paid out of the money in the hands of said administrator and upon the answer of said Cowden to the rule and petitions and evidence adduced in support thereof, when the court made an order directing the said administrator to pay over to Isbell and Bryan and Wilkinson, out of the funds in his hands, each the sum of $200.00 to be credited on their respective claims and to be allowed as a credit to the administrator on his settlement of said estate. The said Cowden, administrator, obtained an appeal from and *supersedeas* to the order of September 21, 1900, allowing the fees of commissioner Wilkinson and the order of July 21, 1903, making the allowance to the said Bryan and Isbell, and the order directing the payment to each of said petitioners the sum of $200.00 entered on January 7, 1905, which appeal was allowed on the 7th day of February, 1905.

At the September term of this Court, 1905, the appellant having failed to print the record as provided by section 18, chapter 135, Code 1906, Annotated, and the rules of the court, the appellees, Isbell and Bryan, by their counsel moved the court to dismiss the said appeal which motion was docketed and continued to the Court at Charleston, November 21, 1905, at which time and place the motion was heard and the appeal dismissed, and, upon such dismissal, on the applica-

tion of the appellant an appeal was again allowed.    It is now insisted by the appellees that more than two years having elapsed from the entry of the orders allowing the fees claimed by the said O. J. Wilkinson and the allowance made to the said Isbell and Bryan it was too late to allow an appeal, the two years within which the statute required the appeal to be allowed had elapsed four months before the application was made for the appeal now pending.    The order of January 7, 1905, distributing the $600.00 of money in the hands of the administrator to the appellees was within the two years within which an appeal could be taken under the statute, and being an order "requiring money to be paid" was appealable under clause 7, section 1, chapter 135, Code 1906, Annotated, the distribution was made in payment of the allowances provided for in the former orders.    The first order, that of September 21, 1900, cannot be reversed in this appeal by reason of the running of the statute, the matter of the allowance to Wilkinson on account of his fees for making the report being within the power of the court.    It appears that the principal objection of the appellant to the allowance to the commissioner was because he had failed to affix to his report the affidavit required by section 5, chapter 137, Code 1906, Annotated, verifying the time he was actually and necessarily employed in making his report.    This objection was overcome by the return to a writ of *certiorari* bringing up the affidavit so required, which was made and filed in the cause before making the order of allowance to Wilkinson.    The order of January 7, 1905, in so far as it directed payment to Wilkinson, was based solely upon the order of September 21, 1900, which was appealable, unreversed and not appealed from, and therefore valid and not reviewable.    In *Shumate* v. *Crockett*, 43 W. Va. 491, (Syl. pt. 1) it is held:    "No error in a final or appealable decree will be considered upon an appeal not taken within two years from its date."—*Buster* v. *Holland*, 27 W. Va. 510.    And in *Stout* v. *Mfg. Co.*, 41 W. Va. 339 (Syl. pt. 2), it is held:    "An appeal taken in time from a decree will bring up for review every former order or decree not itself appealable, no matter when entered, and every appealable decree entered not more than two years before the appeal; but it will not bring up for review any appealable decree or order entered more than two years

before the appeal.    Nor can any error in the decree or order appealed from in time be reviewed, if that error be based solely on an appealable decree or order entered more than two years before the appeal; and furthermore, of course, no error in an order or decree back of such appealable decree, dating over two years back, can be reviewed, no matter what the character of the order or decree in which it was committed." On examination of the authorities of other states, I find that wherever an appeal has been dismissed by reason of the appellant failing to comply with the requirements of the law governing appeals he may have another appeal allowed *if applied for within the time prescribed by the statute from the date of the decree or judgment appealed from.* In *Johnson* v. *Polk County,* 24 Fla. 28, it is held: "The dismissal of an appeal for failure to comply with some requirement of the law governing appeals does not bar a second appeal, nor a writ of error, taken in due time."—Citing *Harris* v. *Ferris,* 18 Fla. 81.    And in *Yeaton* v. *Lenox,* 8 Pet. 123: "A party may, after an appeal has been dismissed for informality, if within five years, bring up the case again."— *Claimants of Steamer Virginia* v. *West,* 60 U. S. (19 How.) 182; *United States* v. *Pacheco,* 61 U. S. (20 How.) 261; 2 Cyc. 529.

The order of January 7, 1905, must be affirmed only as to the direction of the payment to Wilkinson the sum of $200.00 on account of the allowance made to him by the order of September, 1900.

The order of July 21, 1903, however, stands upon a very different footing from that of September 21, 1900.    Without any pleading whatever of any kind, making no parties, serving no notice on any one interested as it appears from the order making the allowance "L. D. Isbell and T. J. Bryan, attorneys of John B. Laidley, deceased, appeared and asked the court to make an allowance to them for their services rendered in this cause;" and upon this the court proceeded to make to them the allowance of $1800, to be paid out of the estate of a decedent against which they were prosecuting a suit to enforce judgment liens.    It cannot be possible that services were rendered by them in this suit to authorize such allowance.    While it appears from the order that the allowance was "for services rendered in this cause," the record does

not disclose any such services in this cause, the filing of a short bill and decree of reference.   But on the other hand counsel in their brief claim that great and valuable services were rendered by them for the decedent in former years, and .say: "That this suit grows out of the hard fought, protracted and bitter litigation running through more than twenty-five years between John B. Laidley and the Central Land Company of West Virginia, and C. P. Huntington, its receiver, three times before this Court on appeal and decided successively in 30th West Va. at page 305; 32nd West Va. at page 134, and 33rd West Va. at page 624, and by Federal Judges Jackson and Goff several times and finally by the Supreme Court of the United States, June 3, 1895, and January 18 and 19, 1900, Vols. 159 and 176, pages 103 and 668, and was made up of some twenty-one or twenty-two ejectment suits, the one for a tract of land of 240 acres, one hundred and forty of which was by Cook's map of Huntington, laid off into lots in the heart of the city; the other nineteen against persons to whom the Central Land Company in its lifetime had sold lots and were held by individuals who had built houses and homes thereon, in all of these suits Mr. Laidley substantially prevailed, recovering the fee to the hundreds of vacant lots, and waiving the fee and accepting the original purchase price with interest on the improved lots, aggregating from $18,000 to $20,000, if all was collected; the whole property recovered by Laidley and his vendees found to be worth in the year of 1888 at least $230,000, (See opinion of Judge Lucas of the Supreme Court, 33 West Va. at page 640).   Some time in June, 1898, industriously and patiently following up a decision of Judge Nathan Goff, of the Federal Court of Appeals, dissolving an injunction and dismissing Huntington receiver's bill, John T. Wilson, F. L. Doolittle and T. J, Bryan (one of the attorneys now resisting this appeal), acting under an order from Judge Doolittle of State Court, took possession of this valuable property for Mr. Laidley, who was at the time ill and though on July 9, 1898, before the Honorable J. J. Jackson, Judge, contempt proceedings were instituted and vigorously prosecuted against said Wilson, Doolittle and Bryan, possession of the estate was never returned to the Central Land Company or its receivers and assigns, Judge Goff allowing an appeal and review

of said order of contempt upon said Bryan, giving bond in the penalty of $5,000 conditioned to deliver up said land if decision should be adverse; this action and possession of said land by said Bryan, Doolittle and Wilson inuring to the benefit of Laidley's estate, and to his creditors, from this blow the Central Land Company, nor its receivers ever recovered; and shortly thereafter conceded utter defeat, sold out the balance of the holdings in West Virginia, gave up the fight and retired from the State." This shows clearly that the allowance of $1,800 was not for services rendered in this cause, but for a claim against the estate of the decedent of long standing for services rendered in his life time; this being so, it was a claim or debt against the estate pure and simple, and if it was intended to prosecute the claim against the estate, proper proceedings should have been taken upon due process, or by filing and proving the same before the commissioner when this cause was before him under the decree of reference, as other claims were proven. This disposes of the appellee's contention that Cowden, the administrator of the estate of Laidley, having no personal interest in the matter of the allowances, is not entitled to appeal, the orders being simply orders of distribution of the estate which he could not question; but we find from the statement of appellees themselves that the circuit court has adjudicated a claim against the estate for services rendered the decedent in his life time, years before the institution of the suit in which the allowance was made, and that without notice or pleadings of any kind to enable the personal representative of the estate to make defense. It is well settled that a judgment or decree cannot be entered in the absence of pleadings upon which to found the same, and if so entered it is void.—*Moseley* v. *Cocke*, 7 Leigh 224; *McCoy* v. *Allen*, 16 W. Va. 724; *Roberts* v. *Coleman*, 37 *Id.* 143 (16 S. E. 482); *Chapman* v. *Railroad Co.*, 18 *Id.* 184; *Renick* v. *Ludington*, 20 *Id.* 511, 536; *Bland* v. *Stewart*, 35 *Id.* 518, (14 S. E. 215); *Pickens* v. *Love*, 44 *Id.* 725, (29 S. E. 1018); *McNutt* v. *Trogden*, 29 *Id.* 469, (2 S. E. 328); *Lilly* v. *Claypool*, 59 *Id.* 130, (53 S. E. 22).

The order of July 21, 1903, being wholly without pleadings to support it is a nullity, absolutely void, and being the only basis upon which the order of January 7, 1905, could

rest, in so far as it provided for the payment of $200 each to Isbell and Bryan, the same must be reversed as to such provision. A void order is not made valid by lapse of time and ever remains without effect as completely as if never entered.

The order of January 7, 1905, in so far as it directs the payment of $200 to Commissioner Wilkinson, is affirmed; and as to the provision therein for the payment of $200 each to Attorneys Bryan and Isbell the same is reversed and the cause remanded to the circuit court of Cabell county for further proceedings to be had therein according to the principles governing courts of equity.

*Affirmed in part. Reversed in part.*